No. 23,951.

A. T. RATCLIFF, *Appellant,* v. C. O. PAUL and E. C. PENLEY,
*Appellees.*

SYLLABUS BY THE COURT.

1. ASSIGNMENT OF OIL AND GAS LEASE—*Warranted "Free from All Incumbrances"—Breach of Warranty.* Where the written assignment of a gas and oil lease recited that the lease was "free from all incumbrances," when in fact the lease was imminently subject to forfeiture, if not actually forfeited, for breach of its terms and burdened with arrearages of rent amounting to $3,750, the assignors were liable for breach of their covenant against incumbrances.

2. SAME—*Breach of Covenants—Liability for Damages.* Where the makers of a written assignment of a gas and oil lease covenanted that they were the lawful owners of the lease and that they had good right and title to sell and assign it, such covenant was breached as soon as made if the lease had been forfeited for noncompliance with any of its stipulated terms, and the assignors were liable in damages to the assignee.

3. SAME—*Evidence Good Against Demurrer.* Record examined and the evidence to support plaintiff's causes of action for fraud and for breach of covenant against incumbrances and for breach of covenant of ownership, good title and right to sell, held good against a demurrer thereto.

Appeal from Sedgwick district court, division No. 1, THOMAS E. ELCOCK, judge. Opinion filed November 10, 1923. Reversed.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the appellant.

*B. R. Leydig, K. M. Geddes,* and *E. W. Grant,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action, in three counts, was brought to recover damages for fraud and breach of covenant in an assignment of certain fractional interests in an oil and gas lease.

The plaintiff alleged that Robinson and Nelson, as agents of Paul and Penley, through false representations on which he relied, induced him to purchase an undivided one-sixth interest in an oil and gas lease for $2,500. Pursuant to this contract, thus fraudulently induced, Paul and Penley assigned the oil and gas lease to plaintiff, beneficially as to the one-sixth interest and nominally as title holder for other parties having interests therein. Plaintiff also alleged that he relied on the covenants in the assignment, which, in part, recited:

Ratcliff v. Paul.

"Know all men by these presents: That C. O. Paul and E. C. Penley on this 15th day of April, 1918, for and in consideration of the sum of One Dollar and other considerations, the receipt whereof is hereby acknowledged, do hereby assign, sell, transfer, and set over unto A. T. Ratcliff all our right, title, and interest, in and to an oil and gas mining lease, the land assigned being described to-wit: [lands described]

[Record reference to lease.] . . .

"That they [are] the lawful owners and holders of said oil and gas mining lease, and the same is free from all incumbrances and that they have good right and title to sell and assign the same. . . .          "C. O. Paul,
                                                                          "E. C. Penley."

The lease, covering 500 acres, was dated March 28, 1916, and provided that if drilling did not begin in one year the lease would be void unless a rental of $5 per acre was paid semiannually in advance.

Plaintiff alleged that no drilling had been begun within a year and no rent had ever been paid, and that at the time the sale and assignment were made to plaintiff, April 15, 1918, semiannual payments of rental were overdue as follows, March 28, 1917, $1,250; September 28, 1917, $1,250; March 28, 1918, $1,250.

The second and third counts related to interests of G. E. McBride and W. T. Senior, who had paid $2,000 and $393 respectively for fractional interests in the same lease, and who had been fraudulently induced to part with their money under the same circumstances as plaintiff. The claims of McBride and Senior had been transferred to plaintiff.

The defendants, Paul and Penley, answered with a general denial and a verified denial that Robinson and Nelson were their agents. Robinson filed a general denial. Nelson's answer admitted that he helped in the sales of the fractional interests assigned to plaintiff and to McBride and Senior, under representations to the purchasers that the lease was free of liens and incumbrances and that the rentals thereon had been paid and that no further rentals would be due until September 28, 1918, but further answered that he had no personal knowledge of the facts except as told to him by his codefendant Robinson, and that all representations made by him were made in good faith and in the belief that they were true.

At the trial, the plaintiff's evidence tended to support the allegations of his petition; he admitted he had never seen Paul and Penley and they had made no oral representations to him; that he had dealt with Robinson and Nelson and in reliance on their representations;

and upon his payment of $2,500 to Nelson, the assignment, executed and acknowledged by Paul and Penley, was delivered to him. It was also shown that no rents had been paid on the lease and that the lessor claimed it had become invalid on March 28, 1917, and that he declined to accept payment of rent due September 28, 1918, tendered by plaintiff, because the prior rents had not been paid.

A demurrer to plaintiff's evidence, filed by Paul and Penley, was sustained. Hence this appeal.

Under the favorable view of plaintiff's evidence and all the favorable inferences possible to be drawn therefrom, which the court was bound to accord when testing it by demurrer (*Casualty Co. v. Power Co.,* 99 Kan. 563, 162 Pac. 313; *Reddy v. Graham,* 106 Kan. 339, 187 Pac. 653), the agency of Robinson and Nelson was established, not by their statements, but by the circumstances. Pursuant to plaintiff's bargain with Robinson and Nelson, as the pretended agents of Paul and Penley, and his payment of $2,500 to them, the assignment of Paul and Penley, duly acknowledged, was promptly forthcoming. A jury would be justified in believing that such facts established the agency, if not otherwise, at least by ratification. Aside from that point, Paul and Penley, on their own behalf, covenanted in writing that the lease was "free from all incumbrances and that they had good right and title to sell and assign the same." In reliance thereon, plaintiff parted with his money. Was not this covenant breached as soon as made? The evidence would support the view that the lease had been forfeited or was in imminent danger of forfeiture at the time the assignment was made to plaintiff. If the lease was not actually forfeited on default of drilling and because of the nonpayment of $3,750 of rents overdue, the unpaid rents subjected the lease to the imminent hazard of forfeiture, a burden which could not be avoided except by payment of $3,750. This burden was an incumbrance which radically diminished the estate assigned to plaintiff. (*Shearer v. Ranger,* 22 Pick. [Mass.] 447, 449; *Estate of Wood,* 41 Leg. Int. 225; 8 A. & E. Enc. of L., 2d ed., 122; 16 A. & E. Enc. of L., 2d ed., 158; 2 Bouvier [Rawle's 3d Rev.] 1530; 20 C. J. 1252.)

If the lease was in fact forfeited because of failure to drill within a year, or because of default in payment of rent—and the statement and attitude of the lessor when plaintiff tendered the semiannual rent in September, 1918, is indicative that such was the fact—the recital in Paul and Penley's assignment that they were the law-

Ratcliff v. Paul.

ful owners and that they had good right and title to sell and assign the lease, was false and their covenant was breached as soon as made.

In *Dale v. Shively*, 8 Kan. 276, Mr. Justice Brewer said:

"The deed purported to convey the entire interest in the land.   .   .   . Upon the trial it was admitted that the Dales had only an undivided one-third interest in the premises.   .   .   .   Upon these facts the court below held that the covenants were broken and that the grantee had a right of action thereon. In this we see no error. Notwithstanding some deviations in Ohio, Massachusetts, and New Hampshire, we think it well settled upon authority that the covenant of seizin is broken as soon as made, if the title be bad, and that an action lies thereon at once without waiting for a disturbance. Kent says, (4 Kent, 471:) 'The covenants of seizin, and of a right to convey, and that the land is free from incumbrances are personal covenants, not running with the land, or passing to the assignee; for, if not true, there is a breach of them as soon as the deed is executed, and they become choses in action which are not technically assignable.' It is said in Shep. Touch. 170: 'If one supposing he hath a good estate doth covenant that he is lawfully seized, or possessed, or that he hath a good estate, or that he is able to make such an alienation, etc., and in truth he hath not, but some other hath an estate in it before, in this case the covenant is broken as soon as it is made.' See, also, 2 Bacon, Abr. 574; [*Richardson v. Dorr*] 5 Vt. 20; [*Lockwood v. Sturdevant*] 6 Conn. 385; [*Foote v. Burnet*] 10 Ohio, 320, 323, Note; Sedg. Dam. 175; [*Lawless v. Collier's Ex'rs*] 19 Mo. 483." (p. 280.)

See, also, *McKee v. Bain*, 11 Kan. 569, 578; *Scantlin v. Allison*, 12 Kan. 85; *Bolinger v. Brake*, 57 Kan. 663, 47 Pac. 537; *Peters v. Bowman*, 98 U. S. 56, 25 L. Ed. 91; Ann. Cas. 1913 B, 1184 *et seq*; note in 125 A. S. R., 447, *et seq*.

The foregoing authorities chiefly deal with breaches of covenant of seizin, ownership, possession, in real property cases, while an exploratory gas and oil lease, until development has been achieved, is a mere license, a chattel real having mainly the attributes of personal property (11 C. J. 385); but the obligations and covenants of a written contract concerning their sale and assignment are subject to no logical distinction on that account. Viewing the assignment of the lease as a sale of personalty the law would imply a warranty of good title on the part of the assignors (35 Cyc. 390, 416) if there had been no written covenant to that effect.

It follows that the demurrer to plaintiff's evidence should have been overruled.

Reversed and remanded for further proceedings consistent herewith.