No. 26,167.

A. T. RATCLIFF, *Appellee*, v. C. O. PAUL and E. C. PENLEY, *Appellants.*

### SYLLABUS BY THE COURT.

MINES AND MINERALS—*Oil and Gas Lease—Void Lease—Recovery of Purchase Price—Evidence—Instructions.* It is held that under the facts shown the purchaser of an interest in an oil and gas lease which was represented and warranted to be valid, but was in fact void by reason of the nonpayment of rentals, is entitled to recover the amount paid; that an instruction concerning agency which is complained of was as to this feature of the case not prejudicial; and that claims of a similar character assigned to the plaintiff are not sustained by the evidence.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed November 7, 1925. Affirmed in part and reversed in part.

*R. B. Leydig, K. M. Geddes, E. W. Grant,* all of El Dorado, *R. C. Foulston, A. M. Ebright, G. I. Siefkin, F. D. Siefkin* and *S. L. Foulston,* all of Wichita, for the appellants.

*J. Graham Campbell* and *Ray Campbell,* both of Wichita, for the appellee.

---

Mines and Mining, 27 Cyc. p. 680; 2 C. J. § 348.

The opinion of the court was delivered by

MASON, J.: A. T. Ratcliff sued C. O. Paul and E. C. Penley to recover the amount he had paid for an interest in an oil and gas lease they had sold him. He also sued in separate counts upon two similar claims of G. E. McBride and W. T. Senior, which they had assigned to him. Upon the first trial a demurrer to the evidence of the plaintiff was sustained, but an appeal resulted in a reversal for further proceedings. (*Ratcliff v. Paul,* 114 Kan. 506, 220 Pac. 279.) Thereafter a trial was had, which resulted in a judgment for the plaintiff upon all three counts. The defendant appeals.

The lease provided that if drilling were not begun within one year it should be void unless a rental of $5 per acre were paid semi-annually in advance. Drilling was not begun, and there was a conflict as to whether any payments were made. The lessor testified directly that nothing was ever paid. There was direct and circumstantial evidence to the contrary, tending to show payments up to the time of the sales in question. This issue was definitely determined in favor of the plaintiff, for, although no special questions were submitted, the instructions were so worded that a verdict for the plaintiff necessarily involved a finding that the lease had become wholly void by reason of a forfeiture for nonpayment previous to the sales of the interest to him and to those under whom he claims. This finding could not have been affected by the rulings complained of, and no new trial of that issue would be required, whatever the decision of this court with regard to the rulings complained of.

Two grounds of reversal are urged: (1) That even if the facts are as claimed by the plaintiff, he proved no actual damages and was entitled only to a judgment for a nominal amount; and (2) that a material error was committed in an instruction concerning agency. The first mentioned point is substantially the same as that discussed in the opinion when the case was here before, and we see no occasion for adding to what was there said. If the plaintiff paid the defendants for an assignment of an oil and gas lease which had already been forfeited for failure to make a payment required to keep it alive, under representations and warranties that it was valid, he gave his money for nothing and is entitled to have it back. It matters little in what terms the basis of recovery is described. The situation is not similar to that presented where one relying upon a broken warranty has received substantially what he bargained for

and is unable to show that he has or necessarily will suffer anything by the breach.

The statement of the defendants' other contention requires a brief review of some of the facts. The title to the lease stood in the name of the defendants, but J. O. Robinson was the beneficial owner of a one-fourth interest for services in procuring the assignment to them. They authorized Robinson to sell the lease for the best price he could get. Robinson arranged with E. L. Nelson to assist him in the sale. Nelson repeated representations made to him by Robinson, closed the trade, delivered the assignment and received the money from the plaintiff. The evidence of the defendants was that they had made Robinson their agent, but knew nothing about Nelson and had no connection with him. The court instructed the jury that under the undisputed testimony both Robinson and Nelson were agents of the defendants, who were bound by their acts. The defendants complain of this instruction so far as it relates to Nelson.

The agency of Robinson was established by the defendants' own testimony, and the correctness of the instruction is not disputed so far as he is concerned. All the evidence on the subject, however, was to the effect that the defendants did not know Nelson and had no direct connection with him whatever. The instruction that Nelson was the agent of the defendants was therefore erroneous, but so far as relates to the sale of an interest in the lease to the plaintiff we think no prejudice could have resulted therefrom. It is clear from the defendants' own testimony that they executed the assignment to the plaintiff and gave it to Robinson to deliver to him. The fact that the physical delivery was made by Nelson, whom Robinson selected for that purpose, is quite immaterial. The case in that respect is within the rule that (where personal confidence is involved) although an agent may not delegate his authority with respect to the exercise of judgment or discretion, he may accomplish a result upon which he has himself determined through a subagent of his own selection. (2 C. J. 689; 21 R. C. L. 861.) Whatever was done by Nelson with respect to the sale to the plaintiff was done in accordance with the direction of Robinson and to his acceptance. The assignment which was delivered to the plaintiff was executed by the defendants for that purpose. Although it purported to pass the full title, the testimony of the defendant who executed the assignment was that he left to the plaintiff the matter of what interest was being sold. So far as relates to the first count

or cause of action—that based on the sale to the plaintiff of an interest in the lease—the judgment as rendered should stand.

With respect to the sales made to McBride and Senior the situation is quite different. There is no conclusive evidence—no evidence introduced by the defendants themselves—that what Nelson did in the making of these sales was done as a mere instrument of Robinson, and that Robinson was acting for the defendants. More than this, we fail to find any evidence whatever to that effect. According to Nelson's testimony Robinson told him he could have an interest in the lease—the amount not being stated. He sold a two-fifteenths interest to McBride and a one-thirteenth interest to Senior, who was his father-in-law. After executing assignments to McBride and Senior for their interests he made a further assignment to J. G. Uhrlaub including the same interests. Being asked why he did this he said: "Because Mr. Senior, Mr. McBride and all the parties in the lease expected me to look after their interests." The Uhrlaub deal, however, fell through. Nelson held the formal legal title to a five-sixth interest in the lease. Of this the beneficial title to one-fourth of the entire lease was in Robinson, the remainder being in the defendants. We see nothing in the evidence to justify the conclusion that the interests assigned to McBride and Senior were intended to come out of the interest owned by the defendants instead of that owned by Robinson, even if, in case that fact were established, there would be a basis for a finding that the sales were made by Robinson as agent for the defendants, acting through Nelson as his instrument for carrying out ministerial details. This view leaves without support the claims against the defendants which were assigned to the plaintiff by McBride and Senior and requires the setting aside of the verdict so far as it is based thereon.

In the first appeal the question involved was whether a demurrer to the evidence was rightly sustained. The reversal was based upon the proposition that the case should have gone to the jury. Whether a distinction was to be made between the several causes of action was not considered or determined. It is not necessary now to examine the question whether McBride and Senior as purchasers from Robinson or Nelson could claim the benefit of the warranty expressed in the assignment to the plaintiff, for their claims are asserted as purchasers from the defendants, and not from Robinson or Nelson. However, warranties of personalty do not ordinarily run with the property. (*Booth v. Scheer*, 105 Kan. 643, 185 Pac. 898.)

As to the first cause of action an affirmance is ordered; as to the second and third a reversal, with directions to render judgment for the defendants.