No. 26,231.

Thomas C. Daggett, *Appellee,* v. The Four Hundred Oil and Gas Company (Defendant) and Buffalo-Texas Oil Company (Intervener), *Appellees;* J. B. Milam (Intervener), *Appellant.*

### SYLLABUS BY THE COURT.

1. Trial—*Findings by Court—Inaccurate Use of Word.* The inaccurate use of a word in a finding of fact made by a trial court will not cause a reversal of the judgment, when from the whole finding the meaning which the court intended to apply to the word can be ascertained and the finding as thus interpreted is supported by the record.

2. Attachment—*Oil and Gas Lease—Ownership—Sufficiency of Evidence.* The statement contained in the findings of fact made by the trial court that W. V. Harner held the title to the property in trust for the Four Hundred Oil and Gas Company was supported by the pleadings and was by them established as a fact in the case.

3. Trial—*Findings by Trial Court—Construction.* Complaint that findings of fact were not supported by evidence will not cause the reversal of a judgment where no such findings were made.

4. Mines and Minerals—*Oil and Gas Lease—Assignment—Warranty of Title.* The sale and written assignment of a number of oil and gas leases implies a warranty of title in the assignor when the assignment specifically declares that the assignor is the owner of the leases.

5. Attachment—*Oil and Gas Lease—Sufficiency of Evidence.* The tenth finding of fact, which concerned the possession of the property in litigation, was supported by evidence.

6. Same—*Oil and Gas Leases—Attachment.* There was no error in the judgment sustaining the attachment and ordering that the attached property be sold to satisfy the plaintiff's claim subject to the rights of the mortgagee, and ordering that the proceeds of the sale be applied first to the payment of the mortgage debt.

Appeal from Neosho district court; Shelby C. Brown, judge. Opinion filed December 5, 1925. Affirmed.

*John J. Jones* and *Hugo T. Wedell,* both of Chanute, for the appellant.

*T. R. Evans,* of Chanute, for appellee Thomas C. Daggett; *James W. Finley, James A. Allen* and *B. M. Dunham,* all of Chanute, for appellee Buffalo-Texas Oil Company.

The opinion of the court was delivered by

Marshall, J.: The plaintiff sued the Four Hundred Oil and Gas Company for the recovery of money and attached certain oil and

1. Appeal and Error, 4 C. J. § 3042.  2. Attachments, 6 C. J. § 1138.  3. Appeal and Error, 4 C. J. § 3188.  4. Mines and Minerals, 27 Cyc. p. 703.  5. Attachments, 6 C. J. § 905.  6. Id., 6 C. J. § 1146.

Daggett v. Four Hundred Oil Co.

gas leases and equipment thereon. The plaintiff recovered judgment against that company and obtained an order for the sale of the attached property. The Buffalo-Texas Oil Company obtained a money judgment against J. B. Milam, who appeals from both judgments.

The case was tried by the court without a jury, and special findings of fact and conclusions of law were made. The special findings of fact and conclusions of law contain a detailed statement of the issues and are as follows:

"1. This action was brought by the plaintiff, Thomas C. Daggett, against the defendant, the Four Hundred Oil and Gas Company to recover the total sum of $6,580.53, with interest from July 1, 1922, for balance due for money paid out and services rendered to said company, and on a claim of Fred Johnson of one thousand dollars against the defendant, which had been assigned to plaintiff.

"2. The original petition was filed on the 18th day of July, 1922, and the amended petition was filed on September 18, 1922. A summons was issued on the 18th day of July, 1922, and served on July 22, 1922, 'By delivering to J. H. Hetley, secretary of the Four Hundred Oil and Gas Company, a corporation, he being the only representative of said company found in my county of Neosho,' was the return made by the sheriff thereon.

"On the same date the sheriff served an order of attachment 'By delivering a copy of the order of attachment duly certified to J. H. Hetley, secretary of said company, he being the only representative of said company found in my county,' was the return made by the sheriff.

"The property since that time has been in the hands of the sheriff.

"3. On the 7th day of October, 1922, the defendant, the Four Hundred Oil and Gas Company, filed an answer in said cause. Said company, however, defaulted and offered no evidence whatever in the cause, and judgment was rendered in said cause on the —— day of ——— 1924, in the sum of $——.

"4. On the 25th day of May, 1923, J. B. Milam, by leave of court having first been obtained, filed his intervening petition in said cause in which he alleges that he was the rightful owner of the legal title and in the possession of the oil and gas mining leases assigned by him to the Buffalo-Texas Oil Company at the time said attachment was issued and levied against said properties above referred to, and further alleges that the attachment affidavit of the plaintiff in said cause was untrue and was insufficient as against the property of the said J. B. Milam. That he was not indebted to Thomas C. Daggett in any sum whatever, and prayed that the attachment be removed from the property and that the title of the Buffalo-Texas Oil Company by order and decree be paramount and superior to any claim, if such there be, in Thomas C. Daggett or the Four Hundred Oil and Gas Company, and that the Buffalo-Texas Oil Company should be decreed to be the legal owner and holder of said property.

"5. On or about September 29, 1919, W. B. Harner became the owner of record of the oil and gas leases involved in this controversy, and Thomas C. Daggett, plaintiff herein, in his answer to the intervening petition of J. B.

Milam, which is verified, alleges that said legal title to said leases and property when taken by the said Harner, he was acting for and on behalf and in the interest of the said defendant, Four Hundred Oil and Gas Company; that he held said property in trust for said company. This answer was verified and no evidence was introduced by the defendant or either of the interveners to contradict said statement.

"6. On or about November 19, 1920, said W. V. Harner made an assignment of the leases in controversy to J. B. Milam, which assignment was recorded in the register of deeds' office of Neosho county, Kansas, on the same date that the assignment was executed; and said J. B. Milam and W. V. Harner entered into a written agreement whereby said Milam agreed on the payment of certain sums of money as specified in said agreement that Harner would have the right to redeem said properties, and that Milam would reconvey the same to him.

"The agreement so made between W. V. Harner and J. B. Milam states: That said assignment from the said W. V. Harner to J. B. Milam was made and executed and delivered as security for the payment of a certain promissory note owing by said W. V. Harner to the Bank of Chelsea, Okla., which note is dated November, 1920, payable May 18, 1922, calling for the sum of $8,083.61, to draw ten per cent interest.

"The last clause of said agreement reads as follows:

"'Now, therefore, said parties hereto expressly agree that said assignment of said oil and gas leases and leasehold estates above referred to was executed as security for the payment of the indebtedness owing by the said W. V. Harner to the said Bank of Chelsea, as evidenced by said note, above described, and the said J. B. Milam has agreed and does by these presents agree with the said W. V. Harner, that upon the full payment and complete satisfaction of said indebtedness represented by said note, on or before May 18, 1921, he, the said J. B. Milam will execute and deliver to the said W. V. Harner, a proper assignment and transfer of said leases and leasehold estates, together with the necessary transfer orders, covering the properties producing oil and gas, and that such assignment shall be and operate as a satisfaction and release of the assignment given by the said W. V. Harner to the said J. B. Milam, under date of November 19, 1920.'

"7. The written agreement by and between the said W. V. Harner and J. B. Milam last above referred to was never placed of record.

"8. The only evidence introduced in said cause for the purpose of showing title in J. B. Milam was the assignment of the leases which had been recorded and the written agreement stating that the assignment of said leases was for the purpose of securing the payment of the note referred to in said assignment.

"9. The right of redemption contained in said written agreement between Harner and Milam was afterwards transferred to the plaintiff, Thomas C. Daggett.

"10. The evidence does not show that the intervener, J. B. Milam, ever had possession of the property in litigation, but shows that he did draw payments on the oil and gas runs for a while which he was to credit on the note provided for in the written agreement between Harner and Milam, and did not have possession of the property at the time the attachment was levied. At that time said property was in the possession of J. H. Hetley, secretary of the Four Hundred Oil and Gas Company.

"11. The assignment above referred to of said leases which had been

placed of record and the agreement referred to between Milam and Harner, quoted from above, was all the evidence of title shown to be in J. B. Milam.

"12. On the 11th day of October, 1922, the leases in litigation herein were assigned by intervener, J. B. Milam, to intervener, the Buffalo-Texas Oil Company, and for said assignment of said leases the said J. B. Milam received payment of $4,500 in cash. In said assignments, which are in writing, the said J. B. Milam states that he was the owner of said leases at the time that he made such assignment for said consideration to the Buffalo-Texas Oil Company.

"At the time said assignment was made said property was in charge of the sheriff of Neosho county, Kansas, under attachment order and service heretofore referred to.

"13. On the 17th day of July, 1923, Buffalo-Texas Oil Company filed its separate answer and cross petition as intervener in said cause by permission of the court. Its answer was a general denial. In its cross petition it is alleged that said company purchased from the intervener, J. B. Milam, the oil and gas leases and leasehold estates in litigation in this case and that said assignment was in writing; that it paid therefor $4,559 on the first day of November, 1922. And it further alleges that J. B. Milam represented to said company he was the owner and in the possession of the leasehold premises and property described in the assignment, and that said intervener, relying on such representations of ownership and possession and title by the said J. B. Milam, purchased said leasehold premises and received the assignment therefor.

"14. Said intervener, Buffalo-Texas Oil Company, further alleges in its cross petition that because of money expended by it on said leasehold, attempting to operate said leaseholds while the attachment existed on said property, was in the sum of $2,230.11.

"15. All the evidence and pleadings in said cause show that said attachment was levied on said property before the assignment of said leases by J. B. Milam to Buffalo-Texas Oil Company.

"16. The Buffalo-Texas Oil Company did not know at the time the leases were assigned to it of the agreement in writing between Harner and Milam, that the assignment from Milam to Harner was given as security for the payment of the debt described therein.

"CONCLUSIONS OF LAW.

"1. At the time this action was brought by plaintiff the Four Hundred Oil and Gas Company was in possession of said property by and through its secretary, J. H. Hetley.

"2. The Four Hundred Oil and Gas Company having answered in said cause, the return of the sheriff is effective and the attachment must be sustained.

"3. The property will be ordered sold under said attachment subject to the agreement or mortgage between Harner and Milam. Whatever equity or claim the Four Hundred Oil and Gas Company had at the time of the levy of the attachment is subject to sale thereunder.

"4. The only interest that Milam had at the time he made the assignment to the Buffalo-Texas Oil Company was that of mortgagee.

"5. The assignment of said leases by Milam to the Buffalo-Texas Oil Company carried with it an implied warranty of title, and under the circumstances and said assignment as shown by the evidence there was constructive fraud in said transfer upon the Buffalo-Texas Oil Company.

"6. The Buffalo-Texas Oil Company was an innocent purchaser of said property as far as the agreement or mortgage that existed between Milam and Harner and which had never been placed of record.

"7. Said Buffalo-Texas Oil Company was not an innocent purchaser as far as the attachment in the action was concerned.

"8. The Buffalo-Texas Oil Company is entitled to judgment against J. B. Milam in the sum of $4,559, for which amount judgment will be rendered.

"9. The last conclusion of law is based upon the proposition that these leases were sold to the Buffalo-Texas Oil Company for a valuable consideration upon a straight assignment of record with an agreement or mortgage held by J. B. Milam and concealed from the purchaser."

Numerous matters are urged as error.

1. One matter urged is that "the court erred in finding that the defendant, the Four Hundred Oil and Gas Company, ever defaulted in said cause." This concerns the third finding made by the court. An examination of that finding shows that the court did not intend to say that the Four Hundred Oil and Gas Company had not filed an answer. Strictly speaking, the company was not in default; but it did not, after filing the answer, make any further appearance and did not defend. That is what the finding really says although the word "defaulted" was used. The erroneous use of that word is not sufficient to cause a reversal of the judgment.

2. Another matter contended is that "the Four Hundred Oil and Gas Company was not the owner of the leases and leasehold estates involved in this case, and the court erred in sustaining the attachment." To determine this contention, finding number six must be considered. That finding shows that W. V. Harner owned the property and that J. B. Milam held a mortgage thereon. That finding was supported by evidence. Reference should now be made to finding number five, which shows that under the pleadings W. V. Harner held the title to the property in trust for the Four Hundred Oil and Gas Company. The ownership of the leases by the Four Hundred Oil and Gas Company was established.

3. Other matters are argued by J. B. Milam as follows: "That J. B. Milam must give the Buffalo-Texas Oil Company title to leases free and clear of all incumbrances because of oral representations

made by him prior to the assignment"; and "that J. B. Milam must give the Buffalo-Texas Company a clear title because of representations made to the Buffalo-Texas Company subsequent to the assignment."

In his brief Milam says:

"There is not one word of evidence as to any representation made by J. B. Milam to the Buffalo-Texas company prior to or at the time of the assignment to the effect that he was the owner of these leases."

A similar contention is made concerning representations made after the assignment of the leases.

Other than the statement contained in the leases that J. B. Milam was the owner of them, there was no evidence to show that representations concerning the ownership of the leases were made by Milam except what may be implied from the fact of the sale. After a careful examination of the findings of the court as set out in the abstract, this court is unable to say that the trial court made the findings complained of. The court did not so find. The findings state that the intervening petition of the Buffalo-Texas Oil Company alleged that Milam represented he was the owner and in possession of the leases.

4. Milam argues "that the assignment from J. B. Milam to the Buffalo-Texas Oil Company did not contain an implied warranty of title," and that "there was no fraud perpetrated on the Buffalo-Texas Oil Company by J. B. Milam." These propositions are advanced to establish that J. B. Milam is not liable to the Buffalo-Texas Oil Company. The court, in conclusion No. 5, found that constructive fraud had been practiced by Milam on the Buffalo-Texas Oil Company. That conclusion depends on the terms of the assignment. It contained the following language:

"Know all men by these presents, made and entered into this 11th day of October, 1922, by and between J. B. Milam, of Chelsea, Okla., party of the first part, and the Buffalo-Texas Oil Company as party of the second part. That for and in consideration of the sum of one dollar, and other valuable consideration in hand paid, by second party, the receipt of which is hereby acknowledged, the said first party has this day sold, assigned, transferred, and conveyed, and does by the presents grant, bargain, assign, sell, transfer and deliver to the said party of the second part, (his) (their) heirs, executors, administrators and assigns, the following oil and gas mining leases and the leasehold estates thereunder and thereby created and covering lands in Neosho county, Kansas, which leases are as follows:  . . ."

The assignment also contained the statement that J. B. Milam was the owner of the leases' therein described.

These contentions resolve themselves into an argument that, although Milam sold the property to the Buffalo-Texas Oil Company, and although he stated in the assignment that he owned the leases, yet there was no warranty of title in him. With this should be noticed another contention of Milam—that "the Buffalo-Texas Oil Company is an innocent purchaser of the oil and gas mining leases involved." The position of Milam is that he was the owner of the property and sold it to the Buffalo-Texas Oil Company which, as an innocent purchaser, obtained it from him. He argues that there was no misrepresentation in the sale, no warranty of title to the property, and no fraud practiced by him. For these reasons, he contends that judgment should not have been rendered against him in favor of the Buffalo-Texas Oil Company for the amount that company paid him for the property. He contends that the Buffalo-Texas Oil Company became the owner of the property and was the owner at the time the attachment was levied, and for that reason the property was wrongfully attached.

Oil and gas leases have been declared to be incorporeal hereditaments. (*Robinson v. Smalley*, 102 Kan. 842, 171 Pac. 1155; *White v. Green*, 103 Kan. 405, 173 Pac. 974.) In *Paulsen v. Hall*, 39 Kan. 365, 18 Pac. 225, this court said that:

"A sale of personal property in the seller's possession for a fair price implies an affirmation by the seller that the property is his own, and implies also a warranty of title by him, unless it is shown by the facts and circumstances of the sale that the seller did not intend to assert ownership in himself, but only to transfer such interest as he might hold in the property sold; and where an implication of warranty arises, and the title of the seller is defective so that nothing passes, the purchaser can recover his money, although there is no fraud or express warranty on the part of the vendor."

An oil and gas lease assignment was under consideration in *Ratcliff v. Paul*, 114 Kan. 506, 220 Pac. 279. There the written assignment contained the following language:

"That they [are] the lawful owners and holders of said oil and gas mining lease, and the same is free from all incumbrances, and that they have good right and title to sell and assign the same." (p. 507.)

After discussing that assignment at some length the court said:

"The foregoing authorities chiefly deal with breaches of covenant of seizin, ownership, possession, in real property cases, while an exploratory gas and oil lease, until development has been achieved, is a mere license, a chattel real

having mainly the attributes of personal property (11 C. J. 385); but the obligation and covenants of a written contract concerning their sale and assignment are subject to no logical distinction on that account. Viewing the assignment of the lease as a sale of personalty the law would imply a warranty of good title on the part of the assignors (35 Cyc. 390, 416) if there had been no written covenant to that effect." (p. 509.)

In the present case, the sale and written assignment implied a warranty of title to the leases in J. B. Milam. His acts and the statement in the assignment constituted a constructive fraud on the Buffalo-Texas Oil Company.

5. Complaint is made of finding number ten. The contention is that the facts stated were not supported by evidence. There was evidence which tended to prove each statement of fact contained in that finding.

6. It is contended that "the court erred in rendering any judgment in favor of the plaintiff and against the defendant [the Four Hundred Oil and Gas Company]." Of this matter, J. B. Milam has no right to complain. (*Payne v. National Bank*, 16 Kan. 147, 148; *Heil v. Heil*, 40 Kan. 69, 19 Pac. 340; *Welsh v. Kelsey*, 71 Kan. 838, 79 Pac. 1081.) After an examination of the record presented, the court is unable to find any error in that judgment. It should be noted that the judgment protected the mortgage rights of J. B. Milam, and that the sale of the property was ordered subject to his lien, which was ordered first paid out of the proceeds of the sale.

The order for the sale of the attached property enters into the judgment of the Buffalo-Texas Oil Company against Milam. If the Four Hundred Oil and Gas Company, and not Milam, owned the property, the attachment was valid, and the order for the sale of the attached property was properly made. If Milam did not own the property, the judgment of the Buffalo-Texas Oil Company must stand. If he did own the property, the assignment to that company was good, and the attachment should have been discharged. He did not own the leases assigned. For that reason, the judgment in favor of the Buffalo-Texas Oil Company against Milam must stand.

The judgment is affirmed.