THURLOW et al. v. WAITE-PHILLIPS CO.
et al.   DOUTHITT v. SAME.
NELSON et al. v. SAME.

Circuit Court of Appeals, Eighth Circuit.
November 10, 1927.

Nos. 7701–7703.

1. Courts ⏂365(27)—Federal courts are bound by Kansas Supreme Court's decision as to whether oil lease of riparian land in that state carries accretions.

In determining whether lease of riparian land in Kansas for oil and gas carries accretions, and whether call for acreage controls call for description, federal courts are bound by law as announced by Supreme Court of Kansas; matter involved relating to titles to realty in that state.

2. Courts ⏂365(1)—That three of seven judges dissented does not touch binding effect of state Supreme Court's decision on federal courts.

That case before state Supreme Court was determined by divided court of seven judges, three of whom dissented, does not touch binding effect of decision on federal courts as statement of law of such state.

3. Navigable waters ⏂44(3)—Under Kansas law, conveyance of tracts, described in government patents as bounded by river bank, carries accretions.

Under law of Kansas, as declared by Supreme Court of that state, oil and gas lease, as well as any other conveyance of tracts defined by government survey and described in lessors' government patents as bounded by river bank, carries accretions, though lease describes land as stated number of acres.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suits by Ben S. Thurlow, by A. P. Douthitt, and by Ike E. Nelson and others against the Waite-Phillips Company and others. From decrees of dismissal, plaintiffs appeal. Affirmed.

F. Dumont Smith, of Hutchinson, Kan., and Chester I. Long, of Wichita, Kan. (J. D. Houston, Austin M. Cowan, Claude I. Depew, J. G. Norton, and W. E. Stanley, all of Wichita, Kan., on the brief), for appellants.

William H. Zwick, of Ponca City, Okl. (S. W. Hayes and D. A. Richardson, both of Oklahoma City, John H. Brennan, of Tulsa, Okl., R. B. F. Hummer, of Henryetta, Okl., G. J. Neuner, of Bartlesville, Okl., E. C. Mead, of Tulsa, Okl., and T. A. Noftzger, of Wichita, Kan., on the brief), for appellees.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

STONE, Circuit Judge. These three cases, involving the same proposition of law but having different plaintiffs, are presented here under two stipulations. In accordance with the first, it is agreed that the record in No. 7702 shall be printed and entitled in all three cases. Under both of the stipulations, it is agreed that similar determination shall be entered here of all the cases on the Douthitt record. These appeals are taken from decrees entered after sustaining motions to dismiss the petitions for insufficient facts to entitle plaintiffs to any equitable relief.

The petition in the Douthitt Case alleges that the plaintiff was the owner of certain land described by government survey boundaries containing approximately 131 acres; that this land bordered the Arkansas river in the state of Kansas; that to this land there had formed accretions of 65 acres which had never been surveyed and never placed upon the tax rolls; that on January 27, 1923, M. W. Baden proposed to plaintiff to take from him an oil and gas lease covering the above surveyed tract and offered to pay therefor the sum of $1 per acre annually in advance for each acre leased; that this proposition was accepted in so far as the 131 acres were concerned but was refused as to the accreted lands because the title thereto was in dispute; that in accordance with such an agreement, plaintiff executed a lease covering only the 131 acres and agreed to warrant and defend the title thereto on condition that Baden should annually pay the sum of $1 per acre, amounting to $131, as rent unless the lands were explored and developed; that this lease was not delivered at the time of signing but it was agreed that it should be placed in escrow under an escrow agreement until Baden could secure certain other acreage desired and should begin development upon some of the property covered by a block of leases, of which this was one; that, thereafter, the conditions of the escrow agreement were met and the lease delivered to Baden who assigned it to Johnson D. Hill, who later assigned it to the defendants; that at the time defendants became assignees they had complete knowledge of all of the above facts or could, by the exercise of ordinary care and diligence, have ascertained the same and knew at such time that the lease was intended to cover and did cover 131 acres, and no more; that prior to the institution of this suit plaintiff attempted to lease the accreted lands for oil and gas development purposes; that defendants are publicly asserting claim of title to said accreted lands and have threatened plaintiff with legal proceedings and ac-

tion for damages in case he leases them to any one else; that such action of the defendants casts a cloud upon the title of plaintiff to the accreted lands, has prevented plaintiff from developing same, has prevented plaintiff from securing the reasonable market value of leases upon said land, will result in drainage of the oil and gas from such land by the adjacent development and that, because thereof, plaintiff prays the removal of the cloud and adjudication of his title and an injunction against defendants from interfering with his disposition and development thereof. The petition refers to and incorporates, as exhibits, the lease and the escrow agreement. The lease and the escrow agreement are as follows:

Exhibit A.

"Producer's 88.

"3418 A.

"Oil and Gas Lease.

"Agreement, made and entered into the 27th day of January, A. D. 1923, by and between A. P. Douthitt, a widower, hereinafter called lessor (whether one or more), and M. W. Baden, hereinafter called lessee, witnesseth:

"That the said lessor, for and in consideration of one hundred thirty and no/100 dollars, cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of drilling and operating for oil and gas, and laying pipe lines, and building tanks, powers, stations and structures thereon to produce, save and take care of said products, all that certain tract of land situate in the county of Cowley, state of Kansas, described as follows, to wit:

"Lots 6 and 7, and the west half of the northwest quarter of section 17, township 33, range 3, and containing 131 acres, more or less.

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration of the premises the said lessee covenants and agrees:

"First. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all produced and saved from the leased premises.

"Second. To pay the lessor, one-eighth of the proceeds each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the wells at his own risk and expense.

"Third. To pay lessor for gas produced from any oil well and used off the premises at the rate of one-eighth of the proceeds per year, for the time during which such gas shall be used.

"If no well be commenced on said land on or before the 27th day of January, 1924, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Oxford Bank, at Oxford, Kansas, or its successors, which shall continue as the depository regardless of the changes in the ownership of said land, the sum of one hundred thirty-one and no/100 dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payment or tenders the commencement of a well many be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all rights conferred.

"Should the first well drilled on the above described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments.

"If said lessor owns a less interest in the above-described land than the entire and undivided fee-simple estate herein, then the royalties and rentals herein provided shall be paid to the lessor only in the proportion

which his interest bears to the whole and undivided fee.

"Lessee shall have the right to use, free of costs, gas, oil and water produced on said land for his operations thereon, except water from wells of lessor.

"When requested by lessor, lessee shall bury his pipe lines below plow depth.

"No well shall be drilled nearer than 200 feet to the house or barn now on said premises, without written consent of lessor.

"Lessee shall pay for damages caused by his operations to growing crops on said land.

"Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including right to draw and remove casing.

"If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof; and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above-described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor, by the payment, any mortgages, taxes, or other liens on the above-described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

"It is also agreed that if there is no oil or gas found in paying quantities in five years, that this lease shall terminate and be null and void.

"In testimony whereof, we sign this the 27th day of January, 1923.

"A. P. Douthitt.            [Seal.]
"Witness: ————."

"State of Kansas, County of Cowley—ss.

"On this 27th day of January, A. D. 1923, before me, the undersigned, a notary public in and for the county and state aforesaid, personally appeared A. P. Douthitt and to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

"In witness whereof, I have hereunto set my official signature and affixed my notarial seal the day and year first above written.

"[Seal.]   Wm. M. Maben, Notary Public.
"My commission expires July 5, 1926."

### Exhibit B.

#### "Escrow Agreement.

"This agreement, made and entered into this 24th day of February, 1923, by and between M. W. Baden, party of the first part, and the various landowners whose names are hereto attached, as parties of the second part, witnesseth:

"That parties of the second part shall execute with their respective wives and husbands, valid oil and gas leases on their respective lands as a block in township 33 south, range 3 east, Cowley county, Kansas, described as follows:

| | |
|---|---:|
| Jerry Patterson, NE ¼, 18—33—3 | 159 |
| Dora Johnson, W ½ SE ¼, 20—33—3 | 80 |
| A. P. Douthitt, lots 6 and 7 and W ½ NW ¼, 17—33—3 | 131 |
| Dora Johnson, E ½ of SE ¼, 20—33—3 | 80 |
| Ike Nelson, NE ¼, 19—33—3 | 160 |
| Dora Johnson, W ½ SE ¼, 21—33—3 | 80 |
| Ike Nelson, N ½ SE ¼, 19—33—3 | 80 |
| Dora Johnson, N ½ NW ¼, 29—33—3 | 80 |
| Dora Johnson, E ½ NE ¼, 30—33—3 | 80 |
| Silas Thurlow, SE ¼ and lots 8 and 9 in NE ¼, 7—33—3 | 210 |
| Silas Thurlow, all west of river and SW ¼ 16—33—3 and lots 4 and 5 and SW ¼ SE ¼, 17—33—3 | 109 |
| Silas Thurlow, SW ¼ (except school), 17—33—3.. | 159 |
| Silas Thurlow, lot 5 in SW ¼, 8—33—3 | 33 |
| Sarah Wertman, E ½ NW ¼ and W ½ NE ¼, 20—33—3 | 160 |
| R. O. Nelson, E ½ NE ¼, 20—33—3, and lot 8, SW ¼ NW ¼, 21—33—3 | 167 |
| Dora Johnson, W ½ NW ¼, 20—33—3 | 80 |
| Ike Nelson, lots 5, 6, and 7 (except that part of lot 5 lying south of L. F. Johnson road), and E ⅝ NE ¼ SW ¼ (except that part lying south of L. F. Johnson road) | 84 |
| Dora Johnson, S ½ SE ¼, 19—33—3 | 80 |
| Dora Johnson, lot 4 and all lot 5 south of the road, 21—33—3 | 64 |
| Dora Johnson, N ½ NE ¼, 29—33—3 | 80 |
| Dora Johnson, lots 6 and 7 and N ½ NW ¼, 28—33—3 | 167 |
| Dora Johnson, W ½ NE ¼, 30—33—3 | 80 |
| Dora Johnson, lots 3 and 4, 29—33—3 | 96 |
| Dora Johnson, lot 8 of Sec. 28, lots 1 and 2 of Sec. 29 | 138 |
| Dora Johnson, SE ¼ SW ¼ and W ⅝ NE ¼, SW ¼ and all E ⅝ NE ¼ SW ¼, S of road, 21—33—3 | 66 |
| Susan Glasgow, N ½ SW ¼, 20—33—3 | 80 |
| Susan Glasgow, S ½ SW ¼, 20—33—3 | 80 |
| Roy H. Douthitt, SE ¼ 18—33—3 | 160 |

—and place the same in escrow in the first National Bank of Winfield, Kansas, together with a copy of this contract.

"It being understood and agreed that each

of the landowners whose names are. affixed hereto, have executed valid oil and gas leases on their respective lands within the above-mentioned territory and place the same in escrow on the following terms:

"First party shall have until March 10, 1923, with which to secure leases on the territory including the various lands in the above block, to make up the block which first party contemplates having before commencing his well, and when said block is so completed, or at any rate, by March 10, 1923, said party shall elect whether he has sufficient leases to justify his commencing a well, and if by March 10, 1923, he has sufficient leases to justify the commencement of a well, he shall commence the actual spudding of a well at some place on said block of leases and within the 'Rainbow Bend' by May 1, 1923, and upon the commencement, in good faith, of the actual drilling of such well within said time, first party shall have the right to take down said leases, upon the payment of one ($1.00) dollar per acre, but on the failure to so commence said well within said time, then said second parties shall be entitled to take down their leases from said bank.

"It is further understood and agreed that if said first party commences the drilling of such well and takes down said leases as herein provided, that he shall with reasonable diligence continue the drilling of such well to a depth of 3,000 feet, unless oil or gas is found in paying quantities at a lesser depth.

"It being understood and agreed that this contract shall be the instructions to said bank with reference to the holding and delivery of said leases when the same are placed in the said bank.

"In witness whereof, the parties have hereunto set their hands.

  "M. W. Baden, First Party.

  "Second Parties:

   "Roy H. Douthitt.

   "Jerry Patterson.

    "By Worden Patterson.

  "A. P. Douthitt,

   "By Roy H. Douthitt.

  "Ike Nelson.

  "Silas Thurlow.

  "R. O. Nelson.

  "Dora Johnson.

   "By R. C. Johnson.

  "Susan Glasgow.

  "Dora Glasgow.

  "Sarah Wertman."

   Amendment, April 3, 1923.

"This contract is amended in so far as it deals with the commencement of a well to read as follows:

"On or before May 1, 1923, first party shall commence the drilling of a well at some location on said block by the moving in of a rig and equipment and shall continue drilling operations in good faith and with due diligence until such well shall have been completed to a depth of 3,000 feet, unless oil or gas in commercial quantities be found at a lesser depth.   M. W. Baden.

   "Johnson D. Hill.

   "Ike Nelson.

   "R. O. Nelson.

   "Dora Johnson.

   "A. P. Douthitt.

   "Silas Thurlow.

   "Sarah Wertman.

   "Jerry Patterson.

   "Roy H. Douthitt."

The position of appellant is that the presumption that the conveyance of riparian land carries with it the accretion thereto, is rebuttable in Kansas; that the true consideration of the contract may be shown (in this case to be $1 an acre and not the lump sum of $131); that in Kansas a call for acreage in a conveyance may control over a call for description; that the presumption as to accretion following the land does not apply to oil and gas leases; that the facts, pleaded in the petition clearly show the intention of the parties to be that only 131 acres were included in the lease.

[1] The parties have presented this matter as though the federal courts were bound by the law as announced by the Supreme Court of Kansas. This position is correct as the matter involved relates to titles to real estate in that state. Guffey v. Smith, 237 U. S. 101, 113, 35 S. Ct. 526, 59 L. Ed. 856.

[2, 3] So considering it, it is necessary to ascertain the law as declared by the Supreme Court of the state of Kansas. At the outset, we are faced by the case of Cushenbery v. Waite-Phillips Co. et al., 119 Kan. 478, 240 P. 400, where the opinion was filed October 10, 1925. That case was determined by a divided court of seven judges, three of whom dissented, but the fact of this close division in the court does not touch the binding effect of that decision as a statement of the law of Kansas. In that case, the very leases involved in these three cases were before the court, the claim there being that they covered only the described land and not the accretions, but that if the leases, as written, were construed as including the accretions, then they should, in conformity with the intention of all of the parties, be reformed to exclude the accretions. The matter of these leases and this escrow agreement were before that

court and its expression upon two matters, controlling here, is clear and definite. That court (page 482, 240 P. 402) says:

"Their elaborate arguments center about two main propositions: (1) That the defendants' leases covered only the actual acreage specified in the contracts and on which the defendants have paid the stipulated rental of one dollar per acre per annum; and (2) that if the defendants' leases are given a construction which will include the accreted lands of the lessors, such construction is at odds with the contracts intended to be made by the lessors and defendants' assignors, and that defendants had notice thereof and are bound thereby.

"Touching the first of these contentions appellants present a formidable array of authorities touching the rebuttable character of the presumption which attaches to the quantity of land which passes in an instrument describing the land in terms of government survey. They concede that there is a presumption that all accretions are included and losses by erosion ignored, and that the call for a stated acreage yields to the actual acreage included in the terms of the government survey; but appellants emphasize the point that this presumption is rebuttable by proof of the true intent of the parties to the instrument. A majority of this court decline to recognize or apply that doctrine to the cases at bar and hold without qualification that the tracts defined by the government survey and described in the government patents under which the lessors hold title include the accretions which have attached thereto since the lessors' lands were surveyed and delimited by the government surveyors in 1871 and patented in accordance therewith. So far as concerns the meandering lines along the river bank run by the government surveyors in 1871, it is to be kept in mind that those meandering lines were not the land boundaries. They were merely mathematical data for calculating the then existing but changeable acreage—no more. The true boundaries of the lessors' lands always were the river bank itself, and such was and is the tenor and legal effect of the land patents under which the lessors of these rival litigants hold title. We have no present concern with legal questions which may arise from sudden changes caused by flood, storm or other unusual agency, as affecting boundaries of riparian lands along meandered streams. Wood v. Fowler, 26 Kan. 682, 688, 689; Fowler v. Wood, 73 Kan. 511, 85 P. 763 [6 L. R. A. (N. S.) 162,

117 Am. St. Rep. 534], and citations; Craig v. Leonard, 117 Kan. 376, 232 P. 235."

Regarding the contention that, where the conveyance is an oil and gas lease, a different attitude should be taken as to the presumption that the accretions follow the legal description, that court (page 484, 240 P. 403) says:

"It is argued for appellants, and supported by some authorities, that while the foregoing may be the prevailing rule as to the legal significance to be given to land descriptions in ordinary conveyances, they ought not to be so interpreted in oil and gas leases, which are mere licenses to come and go on the property concerned and to explore it for these products and to remove them if discovered. This court holds that such a distinction as to the legal effect of a land description in a deed and in an oil and gas lease is too dogmatical for practical purposes and would introduce a subtlety into our law which would be thoroughly mischievous. A legal description which sufficiently defines a tract of land in terms of government survey, in a government patent, and according to the terms of which the land passes from one fee holder to another and is thus listed for taxation, should be given no variable significance whether that description appears in a deed, an ordinary lease, an oil and gas lease, or any other instrument in which the property is the subject of any contract or transaction. Ratcliff v. Paul, 114 Kan. 506, 509, 220 P. 279."

It seems to us that those expressions of that court must control this case.

If it were not for the Cushenbery decision, the writer of this opinion would have no hesitancy in declaring as follows: That this lease should be construed in the light of or in connection with the escrow agreement as parts of one transaction; that so construed, there is no question that all which the lease was intended to cover or could cover was 131 acres; that the rule as to accretions—that they follow conveyances of the land—is based upon a presumption which is rebuttable; that such presumption has less force where the conveyance is an oil and gas lease because the reasons upon which the presumption is based are usually absent in such transactions. I think the Cushenbery Case has produced a patent and burdensome injustice in these cases. If any escape therefrom could be found, I would favor taking advantage of it, but I feel compelled to follow that case for the sole reason that it is controlling authority.

The decrees must be and are affirmed.